## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                    **CRIMINAL DOCKET**

**VERSUS**                                      **NO.  91-189**

**JAMAL ABU SAMAK**                             **SECTION: "E"**


## ORDER AND REASONS

Before the Court is a motion for compassionate release filed by Jamal Abu Samak.[1]

For the following reasons, Samak's motion for compassionate release is **DENIED**.

## BACKGROUND

Jamal Abu Samak was convicted in 1991[2] of conspiring to violate and violating the

Organized Crime Control Act of 1970.[3] He is currently serving a life sentence.[4] Samak's

conviction was affirmed on appeal in 1993.[5] Samak has made various unsuccessful

challenges to his conviction and sentence.[6] On July 11, 2019, prior to the outbreak of

COVID-19, the Court granted Samak's request for appointment of counsel to assist him

with preparing a motion for compassionate release.[7] Ten months later, on May 1, 2020,

---

[1] R. Doc. 318. The Government filed an opposition. R. Doc. 323. Samak filed a reply. R. Doc. 324.
[2] R. Doc. 250.
[3] *See* 18 U.S.C. § 844(i); 18 U.S.C. § 371. Additionally, because Samak's crimes resulted in a death, he was subjected to the penalty provision of 18 U.S.C. § 34, which provides that "Whoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life." 18 U.S.C. § 844(i) contains a similar penalty provision, stating that "if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, [whoever is convicted] shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment."
[4] R. Doc. 250.
[5] *See United States v. Samak*, 7 F.3d 1196, 1197 (5th Cir. 1993). A full history of Samak's filings and the decisions of various courts in denying relief until 2011 is included in the Government's 2011 response to Samak's motion for relief from judgment under Rule 60(b) of the Federal Rules of Procedure. *See* R. Doc. 264. The Government also provides an analysis of the procedural history, including the period after 2011, in R. Doc. 280, at 4–5.
[6] R. Doc. 299, at 2–3.
[7] Rec. Doc. 305.

appointed counsel filed a motion for compassionate release.[8] On May 13, 2020, the Court denied this motion without prejudice for failure to exhaust administrative remedies.[9] On June 15, 2020, Samak brought the instant motion for compassionate release.[10]

Samak is 64 years old and has served 30 years in prison.[11] Samak is currently incarcerated at the United States Penitentiary in Atlanta, Georgia ("USP Atlanta").[12] Samak represents that, on May 14, 2020, he submitted a request to Warden Darrin Harmon at USP Atlanta asking him to petition the Court on his behalf for a reduction in sentence to time served and compassionate release.[13] Samak states Warden Harmon has not issued a decision related to these requests.[14] After more than thirty days passed, on June 15, 2020, Samak filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[15] Samak argues "release is warranted based his age, the length of time he has been incarcerated, and the serious deterioration in his physical health that he has been experiencing due to aging."[16] He states he tested positive and was severely ill from COVID-19 in early April.[17] He further states he suffers from high blood pressure, hyperlipidemia, obesity, high cholesterol, eye issues, and a systolic murmur.[18] In support, Samak attaches his medical records to the motion.[19] Additionally, Samak contends he should be released due to BOP's inability to prevent the spread of the disease within the

---

[8] Rec. Doc. 308.
[9] R. Doc. 317.
[10] R. Doc. 318.
[11] R. Doc. 318.
[12] R. Doc. 318-2.
[13] R. Doc. 318-2.
[14] R. Doc. 318-2, at 7.
[15] R. Doc. 318-1.
[16] *Id.* at 1.
[17] R. Doc. 318-1, at 8.
[18] *Id.* at 13.
[19] R. Doc. 318-6.

prison system.[20] As of the time of this decision, USP Atlanta has had 15 inmates and at least 6 staff members who have tested positive for COVID-19.[21]

## LAW AND ANALYSIS

18 U.S.C. § 3582(c) provides courts "may not modify a term of imprisonment once it has been imposed," except in limited circumstances.[22] As relevant in this case, 18 U.S.C. § 3582(c)(1)(A)(i) provides courts may, upon motion of a defendant or upon motion of the Director of the Bureau of Prisons, reduce a term of imprisonment, "after considering the factors set forth in [18 U.S.C.] § 3553(a)," if "extraordinary and compelling reasons warrant such a reduction."[23] Consideration of the § 3553(a) factors convince the Court Samak is not entitled to compassionate release.

## I.     Samak has exhausted administrative remedies.

Courts may consider a motion for a reduction in sentence on the basis of extraordinary and compelling reasons only if the exhaustion requirements of § 3582(c)(1)(A) are met.[24] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[25] the exhaustion requirements of § 3582(c)(1)(A) are satisfied, and the Court may consider a motion for compassionate release filed by the defendant. In this case, Samak represents he filed a request for compassionate release with the Warden of USP Atlanta on May 15, 2020, over thirty days

---

[20] *Id.*

[21] *COVID-19 Coronavirus (2020)*, U.S. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 10, 2020).

[22] 18 U.S.C. § 3582(c).

[23] *Id.* § 3582(c)(1)(A).

[24] *See id.*

[25] *Id.*

before he filed his motion for compassionate release.[26] The Government does not dispute the exhaustion requirements of § 3582(c)(1)(A) are satisfied.[27] Accordingly, the Court assumes Samak has properly exhausted his administrative remedies, and the Court will proceed to evaluating Samak's request for compassionate release on the merits.

## II.     Samak must present "extraordinary and compelling reasons" warranting a reduction in sentence.

According to Section 3582(c)(1)(A)(i), a district court may reduce a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[28] The United States Sentencing Commission's relevant policy statement, found in Section 1B1.13 application note 1 of the United States Sentencing Guidelines Manual, sets forth three specific circumstances considered "extraordinary and compelling," as well as a catchall provision:

1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I)     suffering from a serious physical or medical condition,
(II)    suffering from a serious functional or cognitive impairment, or

---

[26] R. Doc. 318, at 2.
[27] R. Doc. 323.
[28] 18 U.S.C. § 3582(c)(1)(A)(i).

(III)   experiencing deteriorating physical or mental health
because of the aging process,

that substantially diminishes the ability of the defendant to provide
self-care within the environment of a correctional facility and from
which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is
experiencing a serious deterioration in physical or mental health because of
the aging process; and (iii) has served at least 10 years or 75 percent of his
or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's
minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered
partner when the defendant would be the only available caregiver for
the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of
Prisons, there exists in the defendant's case an extraordinary and
compelling reason other than, or in combination with, the reasons
described in subdivisions (A) through (C).[29]

Samak bears the burden of establishing he is eligible for a sentence reduction

under § 3582(c)(1)(A)(i).[30] In this case, Samak is not suffering a terminal illness and not

yet 65 years old.[31] He does not argue any family circumstances that might warrant a

reduction of his sentence.[32] Subsections (A), (B) and (C) are not at issue. Only subsection

(D) of the policy statement is relevant in this case.

---

[29] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).
[30] *United States v. Ennis*, EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020)
("[T]he defendant has the burden to show circumstances meeting the test for compassionate release."
(citing *United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019)));
*United States v. Wright*, Crim. Action No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020)
(holding the petitioner has the "burden of showing the necessary circumstances, or a combination of
circumstances, that would warrant relief under the compassionate release statute").
[31] R. Doc. 318-1 at 1. Samak is 64 years old.
[32] *Id.*

Subsection (D) requires a finding of extraordinary and compelling reasons to justify a reduction of sentence. On the other hand, the policy statement in the Sentencing Guidelines Manual, last amended on November 1, 2018, has not been updated since the passage of the First Step Act on December 21, 2018. The First Step Act amended § 3582(c) to allow not only the BOP but also a defendant to bring a motion arguing extraordinary and compelling reasons warrant a reduction in the defendant's sentence. The policy statement provides, "A reduction under this policy statement may be granted *only upon motion by the Director of the Bureau of Prisons.*"[33] As a result of this clear conflict, there is some dispute as to which portions, if any, of the policy statement should continue to apply to § 3582 after the passage of the First Step Act.[34]

For example, disagreements exist over whether courts may determine what constitutes an extraordinary and compelling reason under the catchall provision in subsection (D). Although the First Step Act amended § 3582(c) to allow a defendant, and not just the BOP, to bring a motion in court arguing extraordinary and compelling reasons warrant a reduction in a defendant's sentence, subsection (D) of the policy statement only permits the BOP to determine what constitutes "extraordinary and compelling reason[s]" under that subsection.[35] Some courts have questioned why a defendant can bring a motion for compassionate release *in court* if the court cannot decide what amounts to extraordinary and compelling reasons for such release. Those courts have held that,

---

[33] *Id*. § 1B1.13 cmt. n.4.

[34] *See, e.g.*, *United States v. Brown*, 2019 WL 4942051, at *4 (S.D. Iowa Oct. 8, 2019); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 (M.D.N.C. June 28, 2019); *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019); *United States v. Fox*, No. 2:14-CR-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

[35] *See, e.g.*, *United States v. Overcash*, 3:15-cr-263-FDW-l, 2019 WL 1472104, at *2 (W.D.N.C. Apr. 3, 2019) ("The Court agrees that § 1B1.13 now conflicts with § 3582 insofar as a defendant is now able to request a sentence reduction upon a defendant's own motion rather than having to rely on the BOP Director.").

pursuant to the policy goals of the First Step Act, not only the BOP but also courts may now determine what constitutes such "other" extraordinary and compelling reasons. As one court put it, "the only way direct motions to district courts would increase the use of compassionate release is to allow district judges to consider the vast variety of circumstances that may be 'extraordinary and compelling.'"[36] Other courts, however, have not broken from the text of subsection (D) as currently written and have held the BOP alone may determine what qualifies as "other" extraordinary and compelling circumstances.[37]

Samak argues extraordinary and compelling reasons are present for compassionate release because of the potential risks another COVID-19 infection might have on his health.[38] Samak alleges he is unable to provide self-care due to the "serious deterioration of his physical health because of the aging process," "lingering respiratory issues" from his bout of COVID-19 in early April, and severe pain and nerve issues stemming from needles used for IV bags and blood work during his bout of COVID-19.[39] The Court need not weigh in on this conflict in order to resolve the instant motion for compassionate release. For the reasons discussed below, even if both the Court and the BOP may determine what additional circumstances constitute "extraordinary and compelling" circumstances under the catchall provision, Samak is not entitled to compassionate release.

---

[36] *Brown*, 2019 WL 4942051, at *3.
[37] *United States v. Joseph*, No. CR 15-307, 2020 WL 3128845, at *3 (E.D. La. June 12, 2020) ("The Guidelines also identify a category of '[o]ther [r]easons,' but state that such reasons are '[a]s determined by the Director of the Bureau of Prisons.'").
[38] R. Doc. 318-1, at 15-18.
[39] R. Doc. 318-1, at 8.

### III.    Section 3553(a) factors weigh against reducing Samak's sentence.

Even if Samak had demonstrated "extraordinary and compelling" circumstances warranted a reduction in his sentence, he would nevertheless not be entitled to relief under § 3582 because the § 3553(a) factors weigh heavily against his release.

Section 3582 requires the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Likewise, the policy statement regarding compassionate release requires a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[40]

The Court discusses the relevant factors under § 3142(g) and § 3553(a) simultaneously due to the similarity of the factors. Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors related to whether a petitioner is danger to the community include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[41] Similarly, § 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—

---

[40] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(2) & cmt. n.1 (U.S. SENTENCING COMM'N 2018).
[41] 18 U.S.C. § 3142(g).

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][42]

Having considered all of the relevant factors under § 3142(g) and § 3553(a), and having weighed the totality of the relevant circumstances, the Court finds the factors weigh against Samak's request for compassionate release. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct weighs heavily in the Court's decision.

Samak took an innocent life and nearly killed three other individuals when he intentionally started a building fire.[43] Samak attempted to trap his accomplice in the building before setting it on fire.[44] Two of the surviving victims testified at trial that they survived by managing to escape through a small hole in the wall of the building but that another occupant of the building could not fit through the hole in his attempt to get out.[45] One of the surviving victims testified she tried to move a board to make the opening wider for the other occupant to escape, but had to abandon the effort when her arm started burning.[46] Later, "Samak threatened to kill [his] accomplice if the accomplice testified at

---

[42] 18 U.S.C. § 3553(a).
[43] *Id.* at 10–11.
[44] R. Doc. 222, at 4 n.5.
[45] R. Doc. 222, at 5 n.5.
[46] *Id.*

trial."[47] Given the nature of Samak's offenses and the impact his crimes left upon his victims, the Court finds Samak poses a danger to the safety of the community.

Samak alleges that he has been "a model inmate throughout his nearly 30 years of incarceration."[48] He attaches two letters from his factory manager from 2014 and 2020 along with a copy of his inmate progress report demonstrating positive evaluations and "a great level of reliability and personal discipline."[49] The Court recognizes these factors weigh in his favor. Samak fails to be forthcoming, however, about the discipline he faced in November 2018 for the unauthorized and illegal possession of a cell phone in the prison.[50] In response, Samak argues the possession of a cellphone is not an "inherently dangerous or malicious act."[51] The Court agrees, but finds the act to represent a disregard for the law and one which occurred within the past two years.

Lastly, Samak alleges he has served 30 years of his life prison sentence while his co-conspirators have been released from prison. The co-conspirators who hired him to commit the arson served 5- and 10- year sentences and the co-conspirator who physically assisted in the fire was released over 15 years ago.[52] The court reiterates Samak attempted to take his co-conspirator's life by trapping him in the burning building and later threatened to kill him if he testified at trial.[53] These facts illustrate that Samak played a substantially greater role in executing the violent crimes for which he was convicted. The Court finds a reduction of his sentence would not reflect the seriousness of his offenses,

---

[47] R. Doc. 323, at 9.
[48] R. Doc. 318-1, at 18.
[49] R. Doc. 318-3, at 2.
[50] R. Doc. 323-1.
[51] R. Doc. 324.
[52] R. Doc. 318-1, at 19.
[53] R. Doc. 222, at 4 n.5.

promote respect for the law, provide just punishment for his offense, or afford adequate deterrence to criminal conduct.

Accordingly, consideration of the § 3553(a) factors convince the Court Samak is not entitled to compassionate release.

## **CONCLUSION**

**IT IS ORDERED** that Jamal Abu Samak's motion for compassionate release is **DENIED**.[54]

**New Orleans, Louisiana, this 20th day of July, 2020.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[54] R. Doc. 318.