UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL DOCKET** |
| **VERSUS** | **NO. 91-189** |
| **JAMAL ABU SAMAK** | **SECTION: "E"** |

## ORDER AND REASONS

Before the Court is a motion for compassionate release filed by Defendant Jamal Abu Samak.[1] The Government filed an opposition.[2] Samak filed a reply.[3] For the following reasons, Samak's motion for compassionate release is **DENIED**.

## BACKGROUND

Jamal Abu Samak was convicted in 1991[4] of conspiring to violate and violating the Organized Crime Control Act of 1970.[5] He is currently serving a life sentence.[6] Samak's conviction was affirmed on appeal in 1993.[7] Samak has made various unsuccessful challenges to his conviction and sentence.[8] On July 11, 2019, prior to the outbreak of COVID-19, the Court granted Samak's request for appointment of counsel to assist him

---

[1] R. Doc. 338.
[2] R. Doc. 342.
[3] R. Doc. 345.
[4] R. Doc. 250.
[5] *See* 18 U.S.C. § 844(i); 18 U.S.C. § 371. Additionally, because Samak's crimes resulted in a death, he was subjected to the penalty provision of 18 U.S.C. § 34, which provides that "Whoever is convicted of any crime prohibited by this chapter, which has resulted in the death of any person, shall be subject also to the death penalty or to imprisonment for life." 18 U.S.C. § 844(i) contains a similar penalty provision, stating that "if death results to any person, including any public safety officer performing duties as a direct or proximate result of conduct prohibited by this subsection, [whoever is convicted] shall also be subject to imprisonment for any term of years, or to the death penalty or to life imprisonment."
[6] R. Doc. 250.
[7] *See United States v. Samak*, 7 F.3d 1196, 1197 (5th Cir. 1993). A full history of Samak's filings and the decisions of various courts in denying relief until 2011 is included in the Government's 2011 response to Samak's motion for relief from judgment under Rule 60(b) of the Federal Rules of Procedure. *See* R. Doc. 264. The Government also provides an analysis of the procedural history, including the period after 2011, in R. Doc. 280, at 4–5.
[8] R. Doc. 299, at 2–3.

1

with preparing a motion for compassionate release.[9] Ten months later, on May 1, 2020, appointed counsel filed a motion for compassionate release.[10] On May 13, 2020, the Court denied this motion without prejudice for failure to exhaust administrative remedies.[11] On June 15, 2020, Samak filed another motion for compassionate release,[12] which the Court denied on July 20, 2020.[13] The Fifth Circuit affirmed the Court's denial of compassionate release.[14] Samak filed the instant motion for compassionate release on July 3, 2023.[15]

Samak is 67 years old and has served 32 years in prison.[16] Samak is currently incarcerated at the United States Penitentiary in Yazoo City, Mississippi ("USP Yazoo City").[17] On May 9, 2023, Samak submitted a request to the Warden at USP-Yazoo City asking him to petition the Court on his behalf for a reduction in sentence to time served and compassionate release.[18] Samak states the Warden has not issued a decision related to these requests.[19] After more than thirty days passed, on July 3, 2023, Samak filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[20] Samak argues release is warranted based his age, the length of time he has been incarcerated, the deterioration in his physical health due to aging, his increased risk of COVID-19, the inadequate medical care available at USP-Yazoo City, and errors related to his sentence.[21] He states he suffers from hypertension; enlarged prostate with lower urinary tract

---

[9] Rec. Doc. 305.
[10] Rec. Doc. 308.
[11] R. Doc. 317.
[12] R. Doc. 318.
[13] R. Doc. 327.
[14] R. Doc. 337.
[15] R. Doc. 338.
[16] *Id.* at 16-17.
[17] *Id.* at 4.
[18] R. Doc. 338-1.
[19] R. Doc. 338 at 3.
[20] R. Doc. 338.
[21] *Id.*

symptoms; osteoarthritis of the knee; hyperlipidemia; varicose veins of lower extremities with complications; obesity; atopic dermatitis; polyosteoarthritis; and degenerative disc disease.[22] Further, Samak represents he suffers from lingering COVID-19 complications, including chest pain, trouble breathing, and ongoing cough, for which he was prescribed an inhaler.[23] In support, Samak attaches his medical records to the motion.[24] Additionally, Samak contends he should be released due to BOP's inability to prevent the spread of COVID-19 within the prison system and the underlying conditions that put him at a greater risk of severe illness or death.[25] As of the time of this decision, the Yazoo City Federal Correctional Complex has 6 inmate cases of COVID-19,[26] and Samak reports none of those cases are at USP-Yazoo City.[27]

## **LAW AND ANALYSIS**

18 U.S.C. § 3582(c) provides courts "may not modify a term of imprisonment once it has been imposed," except in limited circumstances.[28] As relevant in this case, 18 U.S.C. § 3582(c)(1)(A)(i) provides courts may, upon motion of a defendant or upon motion of the Director of the Bureau of Prisons, reduce a term of imprisonment, "after considering the factors set forth in [18 U.S.C.] § 3553(a)," if "extraordinary and compelling reasons warrant such a reduction."[29] In denying Samak's last motion for compassionate release,[30] the Court reasoned consideration of the § 3553(a) factors did not entitle Samak to

---

[22] *Id.* at 5.
[23] *Id.*
[24] R. Doc. 338-2.
[25] R. Doc. 338 at 4.
[26] *Inmate COVID-19 Data*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited October 13, 2023).
[27] R. Doc. 338 at 4 (citing bop.gov/coronavirus, a now defunct web address).
[28] 18 U.S.C. § 3582(c).
[29] *Id.* § 3582(c)(1)(A).
[30] R. Doc. 318.

3

compassionate release.[31] For the same reasons, the Court again finds the § 3553(a) factors weigh against Samak's compassionate release.

**I.    Samak has exhausted administrative remedies.**

Courts may consider a motion for a reduction in sentence on the basis of extraordinary and compelling reasons only if the exhaustion requirements of § 3582(c)(1)(A) are met.[32] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[33] the exhaustion requirements of § 3582(c)(1)(A) are satisfied, and the Court may consider a motion for compassionate release filed by the defendant. In this case, Samak submitted a request to the Warden at USP-Yazoo City asking him to petition the Court on his behalf for a reduction in sentence to time served and compassionate release,[34] over thirty days before he filed his motion for compassionate release.

The Government disputes that the exhaustion requirements of § 3582(c)(1)(A) are satisfied to the extent that Samak did not identify any specific medical problems in his request to the Warden.[35] Samak's request to the Warden generally stated he had "underlying on-going medical problems," but did not raise any specific concerns,[36] which might have been addressed by the Warden.[37] However, as the Government notes, "it does not appear the Fifth Circuit has any established precedents on whether … failure to specify any medical conditions to the Warden … precludes Samak's raising his many medical

---

[31] R. Doc. 327 at 8-11.
[32] *See* 18 U.S.C. § 3582(c)(1)(A).
[33] *Id.*
[34] R. Doc. 338-1.
[35] R. Doc. 342 at 4-6.
[36] R. Doc. 338-1.
[37] *See* R. Doc. 342 at 5-6.

4

complaints before this Court."[38] Since Samak generally raised the issue of on-going medical problems in his request to the Warden, the Court finds Samak adequately exhausted his administrative remedies and proceeds to evaluating Samak's request for compassionate release on the merits.

## II. Samak must present "extraordinary and compelling reasons" warranting a reduction in sentence.

According to Section 3582(c)(1)(A)(i), a district court may reduce a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[39] The United States Sentencing Commission's relevant policy statement, found in Section 1B1.13 of the United States Sentencing Guidelines Manual, sets forth five specific circumstances considered "extraordinary and compelling," as well as a catchall provision:

> (b) *Extraordinary and Compelling Reasons.*—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:
>
>> (1) *Medical Circumstances of the Defendant.*—
>>
>>> (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>>
>>> (B) The defendant is—
>>>
>>>> (i) suffering from a serious physical or medical condition,
>>>>
>>>> (ii) suffering from a serious functional or cognitive impairment, or

---

[38] *Id.* at 4.
[39] 18 U.S.C. § 3582(c)(1)(A)(i).

5

>> (iii) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

> (C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

> (D) The defendant presents the following circumstances—
>
>> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>>
>> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>>
>> (iii) such risk cannot be adequately mitigated in a timely manner.

(2) *Age of the Defendant.*—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) *Family Circumstances of the Defendant.—*
   (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

   (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

   (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) *Victim of Abuse.*—The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

> (A) sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2) (including the conduct described in 18 U.S.C. § 2246(2)(D) regardless of the age of the victim); or
>
> (B) physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1 (Application Instructions);
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
>
> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) *Other Reasons.*—The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) *Unusually Long Sentence.*—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is

filed, and after full consideration of the defendant's individualized circumstances.[40]

Samak bears the burden of establishing he is eligible for a sentence reduction under § 3582(c)(1)(A)(i).[41] Samak's alleged grounds for release are largely unchanged from his last motion for compassionate release.[42] While Samak is now over the age of 65, he has not provided evidence of "serious deterioration in physical or mental health because of the aging process."[43] He does not argue any family circumstances or allegations of abuse that might warrant a reduction of his sentence.[44] Samak has served more than 10 years of his sentence, but offers no argument as to why his sentence might be "unusually long"[45] since no change in the law would produce a "gross disparity between the sentence being served and the sentence likely to be imposed [at this time]."[46] Accordingly, subsections (b)(2), (b)(3), (b)(4), and (b)(6) do not apply in this case.

Only subsections (b)(1) and or (b)(5) of Section 1B1.13 may be relevant. As to subsection (b)(1), Samak is not suffering a terminal illness or a condition that requires long-term or specialized medical care.[47] Samak states he suffers from hypertension;

---

[40] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(b) (U.S. SENTENCING COMM'N 2023) (Amendment effective Nov. 1, 2023).
[41] *United States v. Ennis*, EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release." (citing *United States v. Stowe*, No. CR H-11-803 (1), 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019))); *United States v. Wright*, Crim. Action No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (holding the petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute").
[42] *Compare* R. Doc. 338 and R. Doc. 318.
[43] R. Doc. 338 at 5-6 (listing common ailments associated with aging including hypertension, osteoarthritis, and degenerative disc disease, but no "serious deterioration"); *See* United States v. Rivas, 833 F. App'x 556, 559 (5th Cir. 2020) (denying compassionate release where prisoner was 75 years old and suffered from congestive heart failure since prisoner failed to establish how these conditions substantially diminished his ability to provide for his own self-care).
[44] R. Doc. 338.
[45] *Id*.
[46] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(b)(6) (U.S. SENTENCING COMM'N 2023) (Amendment effective Nov. 1, 2023).
[47] R. Doc. 338.

enlarged prostate with lower urinary tract symptoms; osteoarthritis of the knee; hyperlipidemia; varicose veins of lower extremities with complications; obesity; atopic dermatitis; polyosteoarthritis; and degenerative disc disease.[48] Further, Samak represents he suffers from lingering COVID-19 complications, including chest pain, trouble breathing, and ongoing cough, for which he was prescribed an inhaler.[49] Samak does not allege that any of these conditions "substantially diminish[] [his] ability [] to provide self-care within the environment of a correctional facility."[50]

Samak contends he should be released due to BOP's inability to prevent the spread of COVID-19 within the prison system and the underlying conditions that put him at a greater risk of severe illness or death.[51] As of the time of this decision, the Yazoo City Federal Correctional Complex has 6 inmate cases of COVID-19,[52] and Samak reports none of those cases are at USP-Yazoo City.[53] Given that there are current no cases of COVID-19 at the facility where Samak is housed, Samak has not met the burden of proving he is "housed at a correctional facility affected or at imminent risk of being affected by an ongoing outbreak of infectious disease."[54] Moreover, Samak offers no evidence that any risk of complications from contracting COVID-19 cannot be "adequately mitigated in a timely manner."[55] Accordingly, subsection (b)(1) does not apply in this case.

---

[48] *Id.* at 5.
[49] *Id.*
[50] *Id.*; U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(b)(1)(B) (U.S. SENTENCING COMM'N 2023) (Amendment effective Nov. 1, 2023).
[51] R. Doc. 338 at 4. The 2023 amendments to U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(b)(1)(D) include the "imminent risk" of complications from an "ongoing outbreak of infection disease" which "cannot be adequately mitigated in a timely manner," as an extraordinary and compelling reason which may warrant release.
[52] *Inmate COVID-19 Data*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited October 13, 2023).
[53] R. Doc. 338 at 4 (citing bop.gov/coronavirus, a now defunct web address).
[54] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(b)(1)(D) (U.S. SENTENCING COMM'N 2023) (Amendment effective Nov. 1, 2023).
[55] *Id.*

9

Finally, Samak argues the combination of his age, health, inadequate access to medical care, and errors related to his sentence constitute extraordinary and compelling reasons that warrant release.[56] However, the Court finds this combination of circumstances does not constitute extraordinary and compelling reasons. None of the circumstances Samak describes, alone or together, are similar in gravity to the reasons provided by § 1B1.13(b)(1)-(4).[57] Moreover, for the reasons discussed below, even if these circumstances constituted "extraordinary and compelling" reasons under subsection (b)(5), Samak is not entitled to compassionate release.

### III. Section 3553(a) factors weigh against reducing Samak's sentence.

Even if Samak had demonstrated "extraordinary and compelling" circumstances warranted a reduction in his sentence, he would nevertheless not be entitled to relief under § 3582 because the § 3553(a) factors weigh heavily against his release.

Section 3582 requires the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Likewise, the policy statement regarding compassionate release requires a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line with "the factors set forth in 18 U.S.C. § 3553(a)."[58]

The Court discusses the relevant factors under § 3142(g) and § 3553(a) simultaneously due to the similarity of the factors. Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors

---

[56] R. Doc. 338. Though his motion does not cite the 2023 amendments to § 1B1.13, the amendment providing for "Other Reasons" for compassionate release under subsection (b)(5) is relevant to Samak's arguments.
[57] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(b)(5) (U.S. SENTENCING COMM'N 2023) (Amendment effective Nov. 1, 2023).
[58] U.S. SENTENCING GUIDELINES MANUAL § 1B1.13(a) (U.S. SENTENCING COMM'N 2023) (Amendment effective Nov. 1, 2023).

related to whether a petitioner is danger to the community include "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[59] Similarly, § 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][60]

Having considered the relevant factors under § 3142(g) and § 3553(a), and having weighed the totality of the relevant circumstances, the Court finds the factors weigh against Samak's request for compassionate release. The circumstances have not changed since Samak's last request for compassionate release was denied.[61] The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law,

---

[59] 18 U.S.C. § 3142(g).
[60] 18 U.S.C. § 3553(a).
[61] *Compare* R. Doc. 318 and R. Doc. 338. Samak is now 67 years old, and he argues his age and infirmity weigh against any risk of recidivism (R. Doc. 338 at 16-17). The three-year change in Samak's age since his last motion does not warrant compassionate release.

11

provide just punishment for the offense, and afford adequate deterrence to criminal conduct weighs heavily in the Court's decision.

Samak alleges that he has been "a model inmate over his almost 32 years of imprisonment and maintains clear conduct (for the majority of his incarceration) to date."[62] He attaches letters from BOP employees from 2020 and 2021 along with a copy of his inmate program review report demonstrating positive evaluations and no incidents reported in the six months prior to January 24, 2021.[63] The Court recognizes these factors weigh in Samak's favor.

However, as the Court observed in its denial of Samak's last motion for compassionate release:

> Samak took an innocent life and nearly killed three other individuals when he intentionally started a building fire. Samak attempted to trap his accomplice in the building before setting it on fire. Two of the surviving victims testified at trial that they survived by managing to escape through a small hole in the wall of the building but that another occupant of the building could not fit through the hole in his attempt to get out. One of the surviving victims testified she tried to move a board to make the opening wider for the other occupant to escape, but had to abandon the effort when her arm started burning. Later, "Samak threatened to kill [his] accomplice if the accomplice testified at trial." Given the nature of Samak's offenses and the impact his crimes left upon his victims, the Court finds Samak poses a danger to the safety of the community.[64]

Samak argues an "unwarranted sentencing disparity" exists between himself and his co-defendants, in that Samak has served over 32 years of a life prison sentence while his co-conspirators have been released from prison.[65] The co-conspirators who hired him to commit the arson served 5- and 10- year sentences and the co-conspirator who

---

[62] R. Doc. 338, at 17.
[63] R. Doc. 338-8; R. Doc. 338-9.
[64] R. Doc. 327 at 9-10.
[65] R. Doc. 338 ay 23.

physically assisted in the fire was released over 15 years ago.[66] The Court addressed this alleged disparity in its last order denying compassionate release.[67] In that order the Court reasoned:

> The court reiterates Samak attempted to take his co-conspirator's life by trapping him in the burning building and later threatened to kill him if he testified at trial.[68] These facts illustrate that Samak played a substantially greater role in executing the violent crimes for which he was convicted. The Court finds a reduction of his sentence would not reflect the seriousness of his offenses, promote respect for the law, provide just punishment for his offense, or afford adequate deterrence to criminal conduct.[69]

The Fifth Circuit upheld the Court's last denial of Samak's compassionate release, noting the Court did not abuse its discretion in weighing the § 3552(a) factors.[70] Accordingly, consideration of the § 3553(a) factors again convince the Court Samak is not entitled to compassionate release.

## CONCLUSION

**IT IS ORDERED** that Jamal Abu Samak's motion for compassionate release[71] is **DENIED**.

**New Orleans, Louisiana, this 24th day of October, 2023.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] *Id.*
[67] R. Doc. 327 at 10-11.
[68] R. Doc. 222, at 4 n.5.
[69] R. Doc. 327 at 10-11.
[70] R. Doc. 337.
[71] R. Doc. 338.